531 So.2d 84 (1988)
Donald and Michele PIERCE, Petitioners,
v.
AALL INSURANCE INCORPORATED, Respondent.
No. 71381.
Supreme Court of Florida.
July 14, 1988.
Rehearing Denied September 19, 1988.
*85 John R. Overchuck of Maher, Overchuck & Langa, P.A., Orlando, and Thomas M. Ervin, Jr. and Robert M. Ervin, Jr. of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for petitioners.
Linda F. Wells of Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Orlando, for respondent.
KOGAN, Justice.
We have for review the opinion of the Fifth District Court of Appeal in Pierce v. AALL Insurance Inc., 513 So.2d 160 (Fla. 5th DCA 1987), in which the following question was certified to this Court as one of great public importance:
FOR THE PURPOSES OF THE PROFESSIONAL MALPRACTICE STATUTE IS AN INSURANCE AGENT A PROFESSIONAL?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
On November 1, 1982, Donald Pierce was injured in a traffic accident caused by an uninsured motorist. His insurance company denied coverage stating that Pierce had not purchased uninsured motorist insurance. Pierce brought this action in April, 1985 against the insurance agent, AALL Insurance Incorporated (AALL), who sold him the policy, alleging that he had requested full uninsured motorist coverage for his policy and that he was told by the agent that he would be fully covered. Pierce also claimed that AALL negligently failed to inform him of his uninsured motorist (UM) coverage options and that AALL negligently failed to obtain the written waiver of UM coverage as required by section 627.727(1), Florida Statutes (1981). Pierce further alleged that the signature on his policy which rejects UM coverage is a forgery.
The trial court granted AALL's motion for summary judgment on the ground that the two-year statute of limitations for professional malpractice had elapsed, refusing to apply the four-year statute of limitations applicable to negligence actions. The district court affirmed the dismissal, holding that an insurance agent is a professional for purposes of application of the statute of limitations. The court reasoned that the act of selling insurance is one which commands special or superior knowledge and education upon which a client would rely, thus rendering the agent a professional.
*86 The professional malpractice statute of limitations states that an action for professional malpractice other than medical malpractice shall be commenced within two years from the discovery of the malpractice. § 95.11(4)(a), Fla. Stat. (1983). Other actions founded in negligence must be commenced within four years. Thus, if this action is one in negligence it lives; however, if it is a professional malpractice action it must be dismissed.[1] In other words, if AALL is a "professional" within the meaning of the professional malpractice statute of limitations, then Pierce may not maintain his action against AALL based on AALL's negligence.
To determine the precise definition of the term "professional" as employed in the statute of limitations, we must first look to the statute itself since the plain language of the legislation must control. However, the legislature has chosen not to include a specific definition of the term professional in either section 95.11 or in any other part of chapter 95. An examination of the different limitations provisions uncovers a separate provision for medical malpractice and another separate provision for malpractice or negligence in connection with the construction of an improvement to real property. Section 95.11(4)(a), specifically addressing professional malpractice, simply does not provide any definition for its terms.
A review of the legislative history also does not assist us in determining the definition the legislature intended to apply to "professional" under section 95.11. The tape recordings of the House Judiciary Committee, Law Revision Subcommittee hearings discussing section 95.11 reveal that one subcommittee member expressed his belief that the committee would not categorize the vocations and professions in the statute to avoid "hurt[ing] some people's feelings... ." The subcommittee member stated that such decisions are best left to the judiciary. H.R., Comm. on the Judiciary, Subcomm. on Law Revision, tape recording of proceedings (Jan. 29, 1974) (on file in the Florida State Archives).
In essence, the sole evidence of legislative intent regarding the definition of the term "professional" is the statement of one legislator that the responsibility of defining terms should be shouldered by the judiciary. While it appears that the legislature may have intended to leave its terms undefined, we suggest that the legislature begin proceedings aimed at clarifying this statute.
Nonetheless, we are still faced with resolving this case, with or without guidance from the legislature. Pierce argues that because the legislature failed to adequately define the term "professional," we are bound by the common law definition which limits professionals to doctors, lawyers, teachers and clergy. As authority for this proposition, Pierce cites several cases from other states which hold that only the aforementioned occupations are considered professions. Richardson v. Doe, 176 Ohio St. 370, 199 N.E.2d 878 (1964); accord Sam v. Balardo, 411 Mich. 405, 308 N.W.2d 142 (1981). AALL points out that these cases are not authority for the Florida common law definition of professional. Few would question, argues AALL, that accountants could be held liable for professional malpractice. Yet under Pierce's limited definition, certified public accountants would not be considered professionals.
AALL urges this Court to adopt a broader construction of the term "professional." The insurance company, in addition to relying on the district court's definition, asks us to extend the definition of professional to any vocation regulated by the Department of Professional Regulation or other statutory regulatory body. Not only would this proposed definition include insurance salesmen, but barbers, section 476.054(1), Florida Statutes (1987); cosmetologists, section 477.015(1), Florida Statutes (1987); embalmers, section 470.003(1), Florida Statutes (1987); and pest controllers, section 482.132(1), Florida Statutes *87 (1987), would also be encompassed within the scope of the professional malpractice statute of limitations. While we intend no disrespect toward these honored vocations, we do not believe they should be considered professions for the purpose of the professional malpractice statute of limitations.
The district court looked for guidance from the dictionary in determining the scope of the term profession. Webster's defines "profession" as "a vocation or occupation requiring advanced education and training, and involving intellectual skills, as medicine, law, theology, engineering, teaching, etc." Webster's New World Dictionary 1134 (2d ed. 1978). The district court, in deciding that this definition includes insurance agents, focused on the act of giving advice upon which a client would rely.
We believe that the district court's definition is too broad to provide meaningful guidance to those who must determine the applicable statute of limitations. The dictionary definition of a professional is not precise enough for this purpose. The phrase in Webster's definition that professionals have "advanced education and training" is too speculative as to the amount of academic preparation required.
Thus, while the common law definition of professional is too narrow, the dictionary definition adopted by the district court is not narrow enough. Accordingly, we must draw a firm line somewhere in between. Education is the common factor among all vocations which are considered professions. We believe that a minimum of a four-year baccalaureate degree is required before any person can be called a professional in the field in which he or she completed their college degree. However, this does not mean that insurance agents who have college degrees in insurance are necessarily professionals. Certainly one may become an insurance agent simply by completing a short correspondence course or by working full time in an insurance agency for one year. § 626.732(1)(b), (c), Fla. Stat. (1983). Thus, one may qualify to be licensed as an insurance agent despite having no specialized education.
Therefore, for purposes of the professional malpractice statute of limitations, we define a profession as a vocation requiring, as a minimum standard, a college degree in the specific field. In other words, if, under the laws and administrative rules of this state, a person can only be licensed to practice an occupation upon completion of a four-year college degree in that field, then that occupation is a profession. For example, one can only be licensed as a certified public accountant in Florida if he or she has completed a baccalaureate degree in accounting plus thirty additional semester hours in that field. § 473.306(2)(b)(2), Fla. Stat. (1987). Similarly, a person cannot be licensed as a land surveyor in Florida unless he or she has graduated from a four-year university surveying program and worked for two years in land surveying under a licensed land surveyor. § 472.013(2)(a), Fla. Stat. (1987). See Cristich v. Allen Engineering, Inc., 458 So.2d 76 (Fla. 5th DCA 1984).[2]
However, as stated, no degree in any field is required to become an insurance agent. It is this specialized education and academic preparation which we believe distinguishes *88 a profession from other occupations. Without such education the term is rendered meaningless. We are mindful that the district court focused on the act of the insurance agent giving advice as the primary factor distinguishing professions from other occupations. However, without the requirement of sufficient education, the agent's act of giving advice is hardly the act of a professional. It is true that an insurance agent frequently has superior knowledge of the insurance field upon which the client may rely. Nonetheless, if such knowledge is not required, the hollow act of giving advice does not render the advisor a professional.
Moreover, insurance agents are not subject to discipline for violations of an ethical code. As Judge Sharp points out in her dissent, it seems ironic that an insurance agent could hide behind a cloak of professionalism to shield himself from liability for his inherently unprofessional and perhaps unethical conduct. Professionals are usually guided by a code of ethics or standard of moral conduct. 513 So.2d at 162 (Sharp, J., dissenting). The failure of a professional to adhere to the prescribed conduct results in discipline from the profession's governing body. For example, accountants, section 473.306(2)(a), Florida Statutes (1987), and doctors, section 458.311(1)(c), Florida Statutes (1987), must prove that they are of good moral character before they can be licensed to practice in Florida.[3] No showing of good moral character need be made by one applying to sell insurance in Florida. § 626.731, Fla. Stat. (1987). While no specific code of ethics is required for a vocation to attain the status of a profession, we nevertheless fully encourage the adoption of such codes for all professions.
Accordingly, we define a profession as a calling requiring, as a minimum for licensing under the laws of Florida, specialized knowledge and academic preparation amounting to at least a four-year university level degree in the field of study specifically related to that calling. We answer the certified question in the negative, quash the opinion of the Fifth District Court of Appeal, and remand this case for proceedings consistent with this opinion.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT and GRIMES, JJ., concur.
McDONALD, J., dissents with an opinion.
McDONALD, Justice, dissenting.
I would approve the opinion of the district court of appeal and utilize its definition of a professional when it said:
Rather than look to the title of the person being sued it is better now to look to the act done which injures. If the act is one which involves giving advice, using superior knowledge and training of a technical nature, or imparting instruction and recommendations in the learned arts then the act is one of a professional.
Pierce v. AALL Insurance, Inc., 513 So.2d 160, 161 (Fla. 5th DCA 1987).
NOTES
[1] We note that Pierce has alleged that AALL forged his signature on the statement rejecting UM coverage. This allegation is one of fraud, which carries with it a four-year statute of limitations.
[2] Other professions requiring at least a four-year university degree for licensure include:

(1) optometry, § 463.006(1)(b), Fla. Stat. (1987);
(2) dentistry, § 466.006(2), Fla. Stat. (1987);
(3) veterinary medicine, § 474.207(2)(b), Fla. Stat. (1987);
(4) architecture, § 481.209(2)(b), Fla. Stat. (1987). While architecture is a profession under our definition, the statute of limitations for the design and construction of improvements to real property is four years, § 95.11(3)(c), Fla. Stat. (1987);
(5) physical therapy, § 486.031(3)(a), Fla. Stat. (1987);
(6) psychology, § 490.005(1)(b), Fla. Stat. (1987);
(7) clinical counselling and psychotherapy, § 491.005(1)(b), (2)(b), (3)(b), Fla. Stat. (1987);
(8) geology, 492.105(1)(d)(1), Fla. Stat. (1987). This list is by no means fully inclusive. It is only intended to illustrate those professions, in addition to the common law professions of medicine, law, education, and clergy, which require at least a baccalaureate degree for licensure under Florida Statutes. These are among the occupations which would qualify as professions under our definition.
[3] In addition, several of the professions previously illustrated require a showing that an applicant for licensure be of good moral character.